UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY BROWN,

        Plaintiff,    Case No. 19-11603
vs.    HON. MARK A. GOLDSMITH

HEARTLAND EMPLOYMENT
SERVICES, LLC,

        Defendant.
_____/

**OPINION & ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
COMPEL ARBITRATION AND FOR SANCTIONS (Dkt. 11), AND DISMISSING THE
COMPLAINT (Dkt. 1)**

Defendant Heartland Employment Services, LLC ("Heartland") has moved to compel arbitration (Dkt. 11). The motion is granted because Plaintiff Mary Brown has failed to show a genuine question as to whether she and Heartland had a binding contract to arbitrate her claims. However, the motion for sanctions is denied, because Brown's resistance to arbitration was not vexatious or unreasonable.

**I.  BACKGROUND**

Brown has filed a ten-count complaint alleging gender-based harassment, pregnancy-based harassment, and retaliation under Title VII of the Civil Rights Act of 1964 and the Elliott Larsen Civil Rights Act; discrimination under the Americans with Disabilities Act and Michigan Persons with Disability Act; and negligent infliction of emotional distress. Compl. (Dkt. 1). She began working at Heartland's nursing home on August 31, 2017. Compl. ¶ 5. She became pregnant in September 2017, and her doctor placed restrictions on her work on November 14, 2017. Id. ¶¶ 6-

7. The doctor increased the restrictions on December 13, 2017, the same day she was sent a letter that she was terminated, effective January 12, 2018. Id. ¶¶ 9, 11.

Before and after Brown filed her claim, Heartland informed her and her attorneys of its belief that these claims are subject to arbitration under Heartland's Mutual Agreement to Arbitrate Claims ("MAA"). Heartland has presented the declaration of Kathy Hutchison, who has served as Director, Safety and HR Operations Support since 2005. Hutchison Decl. and Exs. ¶ 1 (Dkt. 16-1).[1] Hutchison trained Heartland's business units when Heartland implemented its arbitration process in September 2016, and she currently manages the system by which employees may opt out of the arbitration agreement. Hutchison Decl. ¶¶ 1, 8. According to Hutchison, Heartland maintains an online tool "to disseminate new policies, agreements, and trainings to its employees," and each employee has a unique username and password to login to the system to review policies or agreements or take required trainings. Id. ¶¶ 4-5. Employees are free to take as much time reviewing trainings and presentations as they need, and they are paid to do so. Id. ¶ 6.

One such training is a presentation called "Mutual Agreement to Arbitrate Claims" ("MAA Presentation"). Id. ¶ 8. When an employee clicks a blue "Launch" button to launch the MAA Presentation within Heartland's training tool, the training tool opens a 19-page document containing an 11-page slide followed by copies of the 4-page MAA in English and Spanish. Id. After an employee reviews the MAA Presentation, the employee must click another blue button indicating that she has reviewed the presentation. Id. The final step begins with clicking a

---

[1] Hutchison's original declaration (Dkt. 11-1), submitted with the motion to compel arbitration, was missing a page and was replaced by the version submitted on October 4, 2019 (Dkt. 16-1). Statements in her declaration are referred to by paragraph number, and exhibits to her declaration by the page numbers assigned to them within the docket entry.

blue button that says "Acknowledge." Id. When the employee clicks on this button, the training tool opens a window on the screen with the following statement:

> By clicking the 'Acknowledge' button below: a) you acknowledge that you have received and read the Mutual Agreement to Arbitrate Claims; b) you accept and agree to the terms of the Mutual Agreement to Arbitrate Claims; and c) you agree to using an electronic signature to accept and agree to the Mutual Agreement to Arbitrate Claims and that clicking on the 'Acknowledge' button is as legally binding as an ink signature.

Id. The employee may then choose between white buttons indicating "Cancel" or "Acknowledge."

Id. The employee must click the white "Acknowledge" button to complete the presentation. Id.

Based on Heartland's records, Brown completed the MAA Presentation during a shift lasting from 11:00 p.m. on November 5 to 7:00 a.m. on November 6, 2017. Id. ¶¶ 9-10; Hutchison Decl. and Exs., at 9, 30. Heartland's record states the following concerning her engagement with the MAA Presentation:

> Completed by Mary Brown (754089) on 11/6/2017 2:57:32 AM Comments: Acknowledgment is completed
> Completed by Mary Brown (754089) on 11/6/2017 2:57:22 AM
> Started by Mary Brown (754089) on 11/5/2017 11:20:37 PM

Hutchison Decl. and Exs., at 30. According to Hutchison, this indicates that Brown opened the MAA presentation on November 5, 2017 at 11:20 p.m., and that she acknowledged and accepted the MAA on November 6, 2017 at 2:57 a.m. Hutchison Decl. ¶ 13.

The 11-page slideshow alludes to, and the MAA describes, an opt-out procedure. See Hutchison Decl. and Exs. at 14, 23-24. The MAA states that the "agreement is not a mandatory condition of employment," and that an employee who does not wish to be bound by this agreement must send an email to a dedicated email address within fourteen days of agreeing to the terms of the MAA. Id. at 23. Hutchison maintains the records of employees opting out of the MAA and stated that Brown did not opt out. Hutchison Decl. ¶ 14.

3

Brown stated in a declaration that she does "not recall ever seeing any of the slides that were presented in [Hutchison's] declaration that were allegedly shown to me." Brown Decl. ¶ 1, Ex. C to Resp (Dkt. 15-2). She similarly stated that she could not recall ever seeing or agreeing to an agreement to arbitrate disputes, id. ¶ 5, and that she could not recall "immediately going into work and completing any trainings or slideshows related to arbitration," id. ¶ 8. She expresses more certainty in another statement, stating the she has "never seen the arbitration agreement that Defendant alleges to be mutually agreed upon." Id. ¶ 2. Finally, she states that at no point did she ever "intentionally or willfully agree to waive [her] right of trial by jury to go to arbitration with [her] ex-employer," id. ¶ 3, and that at no point did she ever "click a button marked 'acknowledge' knowing that the results of that would be to mandate arbitration," id. ¶ 4.

On August 23, 2019, Dena Nehme, one of Heartland's attorneys, emailed Carla Aikens, one of Brown's attorneys, to inform her "that Ms. Brown's claims against Heartland is [sic] subject to an arbitration agreement . . . ." Pl. Record of Email Exchange, Ex. B to Resp. at 2 (Dkt. 15-1). The attorneys exchanged a series of emails. Id. at 2-11; Decl. of Dena Nehme with Exs. 1-3, Ex. 2 to Mot. (Dkt. 11-2); Decl. of Dena Nehme with Exs. 4-6, Ex. 3 to Mot. (Dkt. 11-3). Heartland's attorneys attempted to persuade Aikens that a valid arbitration agreement existed and would bar suit in federal court. Aikens voiced skepticism of that claim, solicited additional material from Heartland's attorneys, and discussed the possibility of settlement. Although Heartland's attorneys provided the MAA, the MAA Presentation, and the record indicating when Brown completed the training, they do not appear to have provided a sworn declaration concerning the process or a comprehensive and cogent explanation of the MAA process until they attached Hutchison's declaration to the instant motion.

## II. STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") provides that arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA requires a federal court to compel arbitration when a party to an arbitration agreement fails or refuses to comply with the provisions of an enforceable arbitration agreement. 9 U.S.C. § 4. However, "if the validity of the agreement to arbitrate is 'in issue,' the court must proceed to a trial to resolve the question." Great Earth Companies, Inc. v. Simons, 288 F.3d 878, 889 (6th Cir. 2002) (quoting 9 U.S.C. § 4). "In order to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." Id.

If an arbitration clause covers the cause of action, the court must stay the proceedings pending the completion of arbitration. 9 U.S.C. § 3. However, if all of the claims are arbitrable, the court may dismiss the action. Hensel v. Cargill, Inc., 198 F.3d 245 (6th Cir. 1999); Prude v. McBride Research Labs., Inc., No. 07-13472, 2008 WL 360636, at *7-8 (E.D. Mich. Feb. 8, 2008) (dismissing action without prejudice, where all claims were to be submitted to arbitration, and staying the action and retaining jurisdiction would serve no purpose).

## III. ANALYSIS

Brown presents four arguments to support her claim that she is not bound by the MAA: (i) that the MAA fails because there was no consideration, (ii) that the MAA fails because there was no meeting of the minds, (iii) that she cannot be held to the MAA's terms because she was not given notice of the contract, and (iv) that the MAA fails the five-factor test the Sixth Circuit has developed for determining whether an individual has knowingly and voluntarily waived her right to trial. None of these arguments is persuasive. Each will be addressed in turn.

## A. Consideration

Brown argues the MAA fails for want of consideration, because under the terms of the MAA, she lost her constitutional right to a jury trial, while Heartland neither promised nor gave her anything. Resp. at 14-15 (Dkt. 15). However, as Heartland argues, Heartland also promised to submit all claims it has against Brown to arbitration. Mot. at 9. The Sixth Circuit has found in numerous cases that mutual promises to arbitrate claims constitute bilateral consideration. See Mazera v. Varsity Ford Mgmt. Servs., LLC, 565 F.3d 997, 1002 (6th Cir. 2009); Dantz v. Am. Apple Grp., LLC, 123 F. App'x. 702, 708-709 (6th Cir. 2005)). Therefore, the MAA is supported by adequate consideration.

## B. Meeting of the Minds

Brown next argues that the MAA fails because there was no mutuality, or "meeting of the minds." Resp. at 15. Particularly, she argues that she did not manifest an intent to be bound by the MAA because after her termination, she attempted to pursue her claims against Heartland with the Equal Employment Opportunity Commission and in federal court. Id. She cites no law supporting her position, and the position is untenable. By Brown's logic, a party's breach of a contract would constitute evidence that the party never intended to be bound by it, rendering contracts meaningless. What matters is Brown's behavior at the time she allegedly manifested her assent to the contract—the moment she clicked "Acknowledge," and the two-week opt-out period that followed. See Restatement (Second) of Contracts § 50 (1981) ("Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer.").

Heartland has presented an electronic record showing that Brown completed the MAA Presentation in which she acknowledged the mutual agreement to arbitrate claims. Hutchison

Decl. and Exs. at 30. It has also presented Hutchison's sworn statement explaining how the MAA Presentation worked, her sworn statement that Brown did not exercise her option to opt of the MAA, and a copy of the screens Brown would have seen when completing the MAA Presentation. Id. at 1-29. The records and Hutchison's statement constitute compelling evidence that on November 6, 2017, Brown manifested her assent to the MAA, and that she did not manifest an intent to the contrary during the two-week period in which she could have opted out of the MAA.

The only evidence Brown presents to the contrary is her sworn declaration. The declaration does not make her position entirely clear. She appears to stake out three positions: that she <u>knows</u> she did not see the MAA; that she <u>does not remember</u> seeing the slideshow or clicking "Acknowledge;" and that if she clicked "Acknowledge," she <u>did not intend</u> to be bound to arbitration. See generally Brown Decl.

However, Brown's declaration fails to place the validity of the contract at issue under Sixth Circuit law. Concerning her allegation that she did not click "Acknowledge" with the intent of binding herself to the terms of the MAA, the Sixth Circuit has favorably quoted caselaw stating that a "'naked assertion . . . by a party to a contract that it did not intend to be bound by the terms thereof is insufficient to place in issue 'the making of the arbitration agreement' for the purposes of Section 4 of the Federal Arbitration Act.'" Mazera, 565 F.3d at 1002 (quoting Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 55 (3d Cir. 1980)) (modification in Mazera).

Concerning Brown's other statements, a court in this district has found that employees may be bound by their signatures on an arbitration agreement even if they do not remember signing the agreement and even if they state that they never saw the policy. DeOrnellas v. Aspen Square Mgmt., Inc., 295 F. Supp. 2d 753, 764 (E.D. Mich. 2003). DeOrnellas summarized Sixth Circuit precedent to reach this conclusion, as well as the "general rule that 'one who signs a contract which

he has had an opportunity to read and understand, is bound by its provisions.'" Id. (quoting Stout v. J.D. Byrider, 228 F.3d 709, 715 (6th Cir. 2000)). In her declaration, Brown only denies having seen the arbitration agreement; she does not deny that she was presented with it. Brown Decl. ¶ 2. And although she denies clicking "Acknowledge" knowing that the result would be to mandate arbitration, she does not deny clicking the button. Id. ¶ 4. Her statements and omissions lead to two reasonable inferences: either she read the MAA and forgot, or the MAA was presented to her, and she did not review it carefully, or at all, before electronically signing it.

Brown's declaration does not negate Hutchison's statement that Brown had an opportunity to review the contract. Nor has Brown presented any other evidence that Hutchison's declaration was untrue, or that the electronic record of her acknowledgement of the MAA and subsequent failure to opt out of the MAA by email should be construed as something other than evidence of her manifestation of assent to the MAA. Therefore, Brown has failed to create a fact issue as to whether a "meeting of the minds" occurred.

### C. Notice

Next, Brown argues that the MAA is unenforceable because she was not given notice of the contract. See Rembert v. Ryan's Family Steak Houses, Inc., 596 N.W.2d 208, 228 n.34 (Mich. Ct. App. 1999) ("The enforceability of an arbitration agreement may, in some circumstances, turn on whether the employee was given adequate notice and knowingly waived his right to litigate claims in court."). As evidence, she points to her lack of memory of the MAA Presentation describing the arbitration process or of clicking a button acknowledging the MAA. Resp. at 16. She argues that Heartland has not substantiated its claim that it provided her the MAA when she completed the MAA Presentation. However, as discussed above, the fact that she cannot

8

remember having gone through the MAA Presentation and her statement that she did not see the MAA is insufficient to create a fact issue. DeOrnellas, 295 F. Supp. 2d at 764.

Brown disputes Heartland's evidence that it presented her with the contract by writing, "Defendant has exclusively relied on computer evidence without an individual to interpret it and a human resources officer to testify as to the process they currently take with their employees regarding the issue." Resp. at 16. But that is not true. Hutchison interpreted the computer evidence in her declaration. Hutchison Decl. ¶¶ 4-15. Furthermore, Brown does not present any evidence that the process Hutchison described in her declaration was not the process in effect when Brown completed the MAA Presentation. Hutchison specifically stated that Brown accessed the presentation attached to her declaration, which included the MAA and slideshow. Id. ¶ 11. Brown has not shown a genuine dispute of material fact as to whether she received the MAA.

### D. Knowing and Voluntary Waiver

Finally, Brown argues that her waiver of her right to a jury trial was not knowing and voluntary. Courts in the Sixth Circuit look to the following five factors to evaluate such a claim:

> (1) plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances.

Hergenreder v. Bickford Senior Living Grp., LLC, 656 F.3d 411, 420-421 (6th Cir. 2011) (citing Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 668 (6th Cir. 2003) (en banc)).

#### 1. Plaintiff's experience, education and background

Concerning the first factor, Brown is a high-school graduate with no background in law. Resp. at 16. However, the Sixth Circuit has found high-school graduates capable of understanding arbitration agreements. Tillman v. Macy's, Inc., 735 F.3d 453, 461-462 (6th Cir. 2013). Furthermore, even if the MAA would have been difficult for a person of Brown's education and

experience to read and understand thoroughly, the slideshow was written in plain-enough language that a high school graduate should have understood the subject matter and the gist of the agreement, putting her on notice to request additional clarification or seek legal advice as desired.

Brown's argument that "the idea of arbitration is a newer philosophy," Resp. at 16, is well taken, at least as it relates to the sort of employment arrangement she had with Heartland. See Epic Sys. Corp. v. Lewis, -- U.S. --, 138 S. Ct. 1612, 1644 (2018) (Ginsburg, J., dissenting) (citing data indicating that only 2.1% of nonunionized companies imposed mandatory arbitration agreements on their employees in 1992, but 53.9% do today). But Brown has not explained the legal significance of this fact, or why her experience, background, and education make her particularly incapable of understanding the concept of arbitration. As cases like Tillman and Epic Systems show, neither Sixth Circuit nor Supreme Court precedent allow the recent vintage of widespread arbitration agreements to excuse a person in Brown's position from their consequences.

### 2. The Amount of Time Plaintiff Had to Consider Signing the Waiver

On the second factor, Brown argues that two weeks is insufficient time to consult legal counsel. Resp. at 14. She cites no caselaw supporting this position, and the Sixth Circuit has found a three-day window in which to withdraw consent to an arbitration agreement to be a sufficient period of time. Morrison, 317 F.3d at 668. Furthermore, Heartland's record indicates that the training was assigned to Brown on September 1, 2017, and that it was not due until November 30, 2017. Hutchison Decl. and Exs., at 30. And at least according to the slideshow, paper copies of the MAA were available through Human Resources. Id. at 19. Thus, in addition to the opt-out period, Brown had two months to review the contract and seek legal advice before she was required to sign the acknowledgement, including over three weeks since she opened the

MAA Presentation on November 5, 2016. This is enough time to review the contract thoroughly or seek counsel.

### 3. The Clarity of the Waiver

Brown's argument concerning the clarity of the waiver does not address the clarity of either the slideshow or the MAA. Instead, she repeats her arguments that she should not be held to an agreement that she does not remember seeing, that Heartland fails to offer proof that it showed her the slideshow and MAA, and that Heartland points "to unintelligible metadata" while providing no expert or corporate representative to explain what the metadata means. Resp. at 17. Those arguments are rejected for the same reasons as described above and are irrelevant to the waiver's clarity.

Based on the Court's own review of the MAA and slideshow, the waiver appears clear enough. The entire slideshow and MAA concerned arbitration, and while it certainly shaded in favor of agreeing to the waiver, it would not mislead an ordinary reader, and it did not hide "important terms . . . in a maze of fine print." See Morrison, 317 F.3d at 666.

### 4. Consideration for the Waiver

The issue of consideration is addressed above and weighs in favor of enforcing the arbitration agreement.

### 5. The Totality of the Circumstances

Brown presents a wide variety of arguments concerning the "totality of the circumstances" factor. See Resp. at 17-18. Her arguments that no meeting of the minds occurred and that she is disputing whether she in fact clicked "Acknowledge" are rejected for the same reasons as they are elsewhere in this opinion. Likewise, her argument that Heartland "withheld the contract it created" has no evidence to support it. Resp. at 17. Her contentions that Heartland had an advantage in

bargaining power and that it drafted the MAA are more than likely true, but they have minimal legal relevance. The same could be said of most cases enforcing an arbitration agreement between an employer and an employee, and the Sixth Circuit and Supreme Court have rejected the argument that an imbalance in power is a sufficient reason to invalidate an arbitration agreement in the employment context. See Mazera, 565 F.3d at 1002 (citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991)).

Brown's remaining arguments focus on public policy and equity—the fact that Brown's constitutional rights are at stake, the claim that corporations have used contracts like the MAA to undermine statutory protections such as Title VII, and the claim that "this type of anti-social behavior should not be rewarded in a sophisticated society." Resp. at 18. However, the Sixth Circuit has rejected similar policy arguments in the past and found that Title VII claims may be subject to arbitration. See, e.g., Cooper v. MRM Inv. Co., 367 F.3d 493, 499 (6th Cir. 2004); Willis v. Dean Witter Reynolds, Inc., 948 F.2d 305, 310 (6th Cir. 1991)).

Brown points to Logan v. MGM Grand Detroit Casino, 939 F.3d 824 (6th Cir. 2019), as an example of a case where a contract provision failed because it conflicted with Title VII. But Logan did not involve an arbitration agreement. The case centered on an employment application, which limited the statute of limitations to a mere six months, a truncated period which the court found at odds with the protections erected by Congress in Title VII. Id. at 826. In reaching its conclusion, the Sixth Circuit specifically noted that the agreement whose provision it would not enforce was not an arbitration agreement. Logan, 939 F.3d at 839 ("[A] contractually shortened limitation period, outside of an arbitration agreement, is incompatible with the grant of substantive rights and the elaborate pre-suit enforcement mechanisms of Title VII.") (emphasis added). Logan went to some length to distinguish Morrison, despite the fact that it was not cited by either party or the

district court, because Morrison arguably permitted what Logan prohibited—a contractually shortened Title VII limitation period. Logan, 939 F.3d at 836-839. The primary distinction was that the shortened limitation period in Morrison was part of an arbitration agreement, while the shortened limitation period in Logan was not. Id. Therefore, Logan provides scant evidence of the Sixth Circuit's willingness to interfere with arbitration agreements, and none that is relevant to Brown's claim.

Finally, Brown misconstrues what the totality of the circumstances truly amounts to here: a non-mandatory arbitration agreement, which she could reject without facing adverse consequences. See Hutchison Decl. and Exs. at 23-24. These facts contrast sharply, for example, with the circumstances present in Walker v. Ryan's Family Steak Houses, Inc., 400 F.3d 370, 374 (6th Cir. 2005), a case in which the Sixth Circuit invalidated an arbitration agreement because the waiver of trial rights was not knowing and voluntary. The plaintiffs in Walker were "in dire financial circumstances" and "desperate for the low-wage jobs" the defendant offered, and signing a waiver was a mandatory part of applying for the job. Id. at 373-374. The fact that Brown had a meaningful opportunity to review the MAA and could choose to opt out of it supports Heartland's case that the MAA represented a fairly arrived-at, bargained-for exchange.

All five factors favor the finding that Brown knowingly and voluntarily signed the MAA. Therefore, she can be held to its consequences.

**E. Sanctions**

Heartland has moved for sanctions on the ground that Brown has "'unreasonably and vexatiously'" multiplied the proceedings by refusing to arbitrate the claim. See Mot. at 12 (quoting 28 U.S.C. § 1927). Specifically, Heartland claims that it provided Brown's counsel with "clear,

indisputable evidence that establishes the existence of a binding and enforceable arbitration agreement." Mot. at 13. Heartland's argument is rejected for two reasons.

First, the evidence Heartland provided to Brown's attorney was not particularly clear. The email exchange between the lawyers is filled with confusing screen shots and little explanation of the process by which Heartland and Brown agreed to the MAA. Hutchison's declaration and legible exhibits provide a much clearer picture, and those do not seem to have entered the proceedings until this motion was filed.

The second reason for rejecting Heartland's request for sanctions is that there is no way for the Court to determine whether Brown actually saw the arbitration agreement and is now proceeding in bad faith by denying that she saw it. It may be that she acted carelessly in not reviewing all of the slides, including the agreement, or she may have a faulty memory and not recall that the agreement was part of the slide presentation. While neither her carelessness nor her bad memory would serve to undermine the agreement's invalidity, such possible factors would counsel against the imposition of sanctions.

## IV. CONCLUSION

Heartland's motion (Dkt. 11) is granted in part and denied in part. Heartland's request to compel arbitration is granted, but the request to impose sanctions is denied. Brown has not challenged Heartland's contention that the scope of the MAA covers all claims in Brown's complaint. Therefore, this case is dismissed in full without prejudice.

SO ORDERED.

Dated: May 19, 2020  s/Mark A. Goldsmith
 Detroit, Michigan  MARK A. GOLDSMITH
  United States District Judge